```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
CRISTAL LEE MORRIS,                                             :
                                                                :
                                        Petitioner,             :
                                                                :
                        -against-                               :
                                                                :
THOMAS DECKER, in his official capacity as                      :
Field Office Director, U.S. Immigration and                     :
Customs Enforcement; JOHN F. KELLY, in his                      :
official capacity as Secretary of the U.S.                      :
Department of Homeland Security; JEFFERSON                      :
B. SESSIONS, in his official capacity as Attorney               :
General of the United States,                                   :
                                                                :
                                        Respondents.  X
--------------------------------------------------------------
```

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5/11/2017
```

17-CV-02224 (VEC)

OPINION & ORDER

VALERIE CAPRONI, United States District Judge:

      Cristal Morris ("Petitioner"), a lawful permanent resident ("LPR"), petitions for a writ of habeas corpus seeking an individualized bond hearing by the Department of Homeland Security. Petitioner argues that the rationale of *Lora v. Shanahan*, 804 F.3d 601 (2d Cir. 2015), which held that criminally convicted immigrants awaiting removal cannot be detained for longer than six months without a bond hearing, extends to LPRs such as Petitioner, who are placed in removal proceedings. For the following reasons, this Court agrees, and holds that Petitioner, who has been detained for over seven months, must be promptly given an individualized bond hearing.

**BACKGROUND**

      The material facts in this case are few and undisputed. Petitioner, a Jamaican citizen, has resided in the United States since she arrived as a 16-year-old in 2003. Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (hereafter, "Pet.") ¶¶ 1, 20, Dkt. 1. She became an LPR in June 2013. Pet. ¶¶ 1, 20. In November 2014, Petitioner left for an approximately one-week trip to Guyana. Pet. ¶ 24. Upon her return, she was arrested at John F. Kennedy

International Airport for importation of cocaine.  Pet. ¶ 24.  Petitioner pled guilty to one count of importation of cocaine, for which she was sentenced to six months in federal prison.  Pet. ¶ 24.  During at least a portion of the pendency of her criminal case, she was released, and she self-surrendered to serve her sentence.  Declaration of Andrea Saenz, Ex. A ("Parole Req.") at 4, Dkt. 4.

After completing her sentence, Petitioner was placed into the custody of the U.S. Immigration and Customs Enforcement ("ICE") for removal proceedings pursuant to a Notice to Appear.  Pet. ¶¶ 2, 25.  The Notice to Appear alleges that Petitioner, as an "arriving alien" pursuant to 8 U.S.C. § 1225(b)(2), is subject to removal because of her cocaine-importation conviction.  Pet. ¶¶ 3, 25–26.  Petitioner has been detained in ICE custody since October 7, 2016.  Pet. ¶ 2.

At a January 2017 master calendar hearing, Petitioner admitted the factual allegations and charges of removability in the Notice to Appear, and she filed an application for asylum, withholding of removal and relief under the Convention against Torture.  Pet. ¶ 26; Declaration of Deportation Officer Naeem T. Williams (hereafter, "Williams Decl.") ¶ 12, Dkt. 11.  The Immigration Judge scheduled her merits hearing for June 5, 2017.  Williams Decl. ¶ 12.  On January 25, 2017, Petitioner submitted to ICE a request for humanitarian parole, Pet. ¶ 27, which has been denied.  May 10, 2017 Letter, Dkt. 17.

On March 28, 2017, Petitioner filed this habeas petition, arguing that her detention under section 1225(b) without a bond hearing violates the Due Process Clause.  The Supreme Court is currently considering this precise legal issue in *Jennings v. Rodriguez*, No. 15-1204, and the Second Circuit has stayed cases pending before it that raise this issue.  *See, e.g.*, *Arias v. Aviles*, No. 16-3186 (2d Cir. filed Sept. 12, 2016).  Although this Court might normally be inclined to

stay the case pending the Supreme Court and Second Circuit's consideration of the very legal issue presented by the petition, the prolonged deprivation of Petitioner's liberty without any individualized assessment of the risk that she will flee, counsels against that approach. For the reasons stated herein, the Court orders that Petitioner be given an individualized bond hearing.

**DISCUSSION**

"It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Demore v. Kim*, 538 U.S. 510, 523 (2003) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). To avoid constitutional concerns, the detention of aliens following a final order of removal must be subject to a "'reasonable time' limitation," and six months has been held to be presumptively reasonable. *Zadvydas v. Davis*, 533 U.S. 678, 682, 701 (2001) (interpreting 8 U.S.C. § 1231); *see also Clark v. Martinez*, 543 U.S. 371, 378 (2005) (applying *Zadvydas* to all categories of aliens detained pursuant to 8 U.S.C. § 1231). Two years later, in interpreting 8 U.S.C. § 1226(c), which governs the detention of aliens who have committed certain criminal offenses, the Supreme Court held that the detention of an alien for "the limited period of his removal proceedings" was constitutionally permissible. *Demore*, 538 U.S. at 530 (six-month detention was constitutionally permissible). After reviewing *Zadvydas* and *Demore*, the Second Circuit concluded that mandatory detention pursuant to 8 U.S.C. § 1226(c) for longer than six months without a bond hearing violates the Due Process Clause. *Lora v. Shanahan*, 804 F.3d 601, 606 (2d Cir. 2015).

Petitioner is being detained pursuant to 8 U.S.C. § 1225(b)(2)(A), which governs the detention of an "arriving alien," *i.e.,* a non-citizen (including an LPR) seeking admission to the United States. Section 1225(b) does not explicitly limit the length of such detention or explicitly discuss the availability of bail or an individualized bail hearing, but it does permit discretionary

3

parole by the Department of Homeland Security.[1] 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 212.5. Neither the Supreme Court nor the Second Circuit has grappled with whether indefinite detention pursuant to section 1225(b) violates the Due Process Clause, although, as noted above, this very issue is currently pending before both courts.

Petitioner argues that *Lora* should be extended to section 1225(b) and that section 1225(b), as applied to Petitioner's case, violates due process because Petitioner's detention has exceeded six months. The Government responds that *Lora* is inapplicable because Petitioner is not being detained pursuant to the statute at issue in *Lora*. The Government contends that the Court should not impose a six-month limitation on the period of detention for non-citizens seeking admission and that Petitioner's detention does not violate the Due Process Clause.

I. **Applicability of *Lora* to the detention of arriving aliens pursuant to section 1225(b)**

In *Lora*, the Second Circuit concluded that to avoid constitutional concerns, 8 U.S.C. § 1226(c) must be interpreted to include "an implicit temporal limitation on the length of time a detainee can be held before being afforded an opportunity to seek bail." *Lora*, 804 F.3d at 603. *Lora* stressed that the Supreme Court "has made clear that the indefinite detention of a non-citizen 'raise[s] serious constitutional concerns' in that '[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects.'" *Id.* at 606 (alterations in original) (quoting *Zadvydas*, 533 U.S. at 682, 690). Agreeing with the Ninth Circuit's opinion in *Rodriguez v. Robbins* ("*Rodriguez II*"), 715 F.3d 1127 (9th Cir. 2013), on the issue, *Lora* established a bright-

---

[1] Section 1225(b)(2)(A) provides that, subject to certain exceptions that are not relevant here, "in the case of an alien who is an applicant for admission, if the examining immigration office determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a [removal] proceeding." 8 U.S.C. § 1225(b)(2)(A).

4

line rule that "mandatory detention for longer than six months without a bond hearing affronts due process." *Id.* at 606. *Lora* further joined the Ninth Circuit in holding that "the detainee must be admitted to bail unless the government establishes by clear and convincing evidence that the immigrant poses a risk of flight or a risk of danger to the community." *Id.* at 616.

District courts in the Southern District of New York are split on whether *Lora*, which concerns section 1226(c), extends to section 1225(b). Now-retired Judge Scheindlin concluded, without further analysis, that *Lora* was not applicable to an LPR held pursuant to section 1225(b), and she held that the LPR being held pursuant to section 1225(b) was not entitled to an individualized bond hearing, regardless of the length of detention. *Cardona v. Nalls-Castillo*, 177 F. Supp. 3d 815, 816 (S.D.N.Y. 2016). Judge Keenan similarly held that an LPR detained pursuant to section 1225(b) was not entitled to an individualized bond hearing. *Perez v. Aviles*, 188 F. Supp. 3d 328, 332 (S.D.N.Y. 2016).

On the other hand, Judge Abrams extended *Lora* to an LPR detained pursuant to section 1225(b). *Arias v. Aviles*, No. 15-CV-9249 (RA), 2016 WL 3906738 (S.D.N.Y. July 14, 2016). Judge Abrams concluded that LPRs "possess the same rights at the border as they do inside it, in spite of their brief absence from the United States." *Id.* at *8 (discussing *Kwong Hai Chew v. Colding*, 344 U.S. 590 (1953) and *London v. Plasencia*, 459 U.S. 21 (1982)). Applying the canon of constitutional avoidance, Judge Abrams reasoned that because *Lora* limited the length of permitted detention without a bond hearing to six months for a continuously-present LPR, the length of detention without a bond hearing for an LPR seeking readmission also must be similarly limited. *Id.* Judge Abrams further reasoned that interpreting section 1225(b) to permit the indefinite detention of an LPR without a bond hearing "could result in affording more protections to non-resident aliens detained under section 1226(c), and for whom removal is

authorized by law, than to LPRs detained pursuant to § 1225(b) and merely accused of wrongdoing." *Id.* at *9 (citing *Rodriguez II*, 715 F.3d at 1143 ("[I]f anything it would appear that the LPRs who fall within § 1225(b)'s purview should enjoy *greater* constitutional protections than criminal aliens who have already failed to win relief in their removal proceedings.") (alteration and emphasis in original)); *accord Ricketts v. Simonse*, 16 Civ. 6662 (LGS), 2016 WL 7335675, at *4 (S.D.N.Y. Dec. 16, 2016) (detention of an LPR pursuant to section 1225(b) was subject to a reasonableness limitation of six months "so as not to afford aliens detained and awaiting removal pursuant to § 1226(c) greater protections post-*Lora*" than LPRs detained pursuant to section 1225(b)). In *Saleem v. Shanahan*, Judge Abrams extended *Arias* to a non-resident arriving alien detained pursuant to section 1225(b). *Saleem v. Shanahan*, No. 16-CV-808 (RA), 2016 WL 4435246 (S.D.N.Y. Aug. 22, 2016).

This Court joins Judge Abrams in holding that the same considerations that led the Second Circuit to limit section 1226(c) detention without a bond hearing to six months compel a similar result here. As in *Arias*, this Court concludes that an LPR absent from the United States for approximately one week possesses the same due process rights at the border as those enjoyed by an LPR continuously present within the United States. And, as in *Arias*, to avoid constitutional concerns, section 1225(b) must be read to include a six-month limitation on the length of detention of an LPR without an individualized bond hearing.

In arguing that immigrants at the border have fewer constitutional protections than immigrants continuously present in the United States, the Government relies on *Shaughnessy v. United States ex rel. Mezei* ("*Mezei*"), 345 U.S. 206 (1953), which held that an LPR's detention at the border without a hearing did not deprive the LPR of his constitutional rights. 345 U.S. at 215. *Mezei* concluded that "an [immigrant] on the threshold of initial entry stands on a different

6

footing" than an immigrant within the United States, and for immigrants seeking admission, "[w]hatever the procedure authorized by Congress is, it is due process as far as an [immigrant] denied entry is concerned." *Mezei*, 345 U.S. at 212 (internal quotation marks omitted).[2]

*Mezei* is distinguishable for several reasons. First, as noted by Judge Abrams in *Arias*, "courts have refused to apply *Mezei* where, as here, the LPR's absence was brief." *Arias*, 2016 WL 3906738, at *6. In *Mezei*, the LPR was out of the country for 19 months, and there was evidence that he had willfully abandoned his residency; here, Petitioner was out of the country for one week, and there is no evidence that she intended to abandon her United States residency. *See id*. at *6-7 (discussing *Mezei*). Second, in *Rodriguez II*, the only Court of Appeals to consider detention under section 1225(b), the Ninth Circuit concluded that *Mezei* was inapposite because it was decided under a prior statutory regime that considered immigration in terms of "entry" and "exclusion," rather than the current statutory regime's consideration of "admission" and "inadmissibility." *Rodriguez II*, 715 F.3d at 1140–41 (discussing the replacement of the Immigration and Nationality Act with the Illegal Immigration Reform and Immigration Responsibility Act of 1996). This Court agrees with *Arias* and *Rodriguez II* that *Mezei* is inapplicable to an LPR who has been out of the country for only a brief period.

This Court sees no principled basis to distinguish the due process rights afforded the LPR in *Lora* from those to which Petitioner is entitled. Both are LPRs, both were convicted of a drug crime, and both were detained pending the conclusion of removal proceedings. Like the statute at issue in *Lora*, nothing in section 1225(b) limits the length of detention. *See Arias*, 2016 WL 3906738, at *8. The constitutional principles underpinning *Lora* require that section 1225(b) be

---

[2] *Mezei* established the "entry fiction" that "although aliens seeking admission into the United States may physically be allowed within its borders pending a determination of admissibility, such aliens are legally considered to be detained at the border and hence as never having effected entry into this country." *Rodriguez II*, 715 F.3d at 1140 (citing *Barrera-Echavarria v. Rison*, 44 F.3d 1441 (9th Cir. 1995) (discussing *Mezei*)).

similarly construed so as to avoid constitutional concerns. Therefore, this Court joins *Arias*, *Ricketts*, and *Rodriguez II* in holding that the detention of an LPR pursuant to section 1225(b) for longer than six months without an individualized bond hearing violates due process.

## II. The political branches' plenary power over immigration

The Government argues that "the political branches' broad power over immigration is at its zenith at the international border," and that "[t]he power to admit or exclude aliens is a sovereign prerogative vested in the political branches" that is entitled to deference. Opp. Br. at 8 (internal quotation marks and citations omitted).

Accepting the Government's assertion that the political branches have plenary power over immigration, such plenary power does not shield immigration laws from constitutional inquiry. *See Zadvydas*, 553 U.S. at 695 (Congress's "'plenary power' to create immigration law . . . is subject to important constitutional limitations." (internal citation omitted)). This Court is not questioning the political branches' power to admit or remove immigrants; rather, this Court holds only that LPRs detained pending removal proceedings are entitled to certain due process protections, including the availability of an individualized bond hearing if the detention is prolonged. This Court's holding that the Petitioner must be afforded a bond hearing will not effect Petitioner's release; whether Petitioner will be released remains at the discretion of the immigration officer considering Petitioner's bond application. In addition, any release that occurs will be subject to whatever release requirements are imposed by the immigration judge. *See Zadvydas*, 533 U.S. at 696 ("The choice . . . is not between imprisonment and the [immigrant] 'living at large.' It is between imprisonment and supervision under release conditions that may not be violated.").

The Government further argues that the Court should not upset Congress's "detailed statutory scheme" that provides immigrants with different immigration statuses with "varying degrees of process" on issues of admission and detention. Opp. Br. at 10. For example, in the context of a removal proceeding, an immigrant seeking admission bears a different burden of proof than an immigrant who was "lawfully present in the United States pursuant to a prior admission." 8 U.S.C. § 1229a(c)(2)(A); *see also* Opp. at 11.[3] In addition, LPRs, unlike some classes of immigrants, may challenge an order of expedited removal in a proceeding before an immigration judge. *See* 8 C.F.R. § 235.3; *see also* Opp. at 11. But the existence of a complex statutory scheme does not alter core constitutional protections, and those protections are violated by prolonged mandatory detention without a bond hearing.

The Government further contends that the availability of discretionary parole "lessens any possible due process concerns" posed by detention pursuant to section 1225(b). Opp. Br. at 16. Discretionary parole for "urgent humanitarian reasons" or "significant public benefit" may be available for some immigrants, *see* 8 U.S.C. § 1182(d)(5)(A), but Petitioner's parole request was denied. May 10, 2017, Letter, Dkt. 17. In any event, the availability of discretionary parole does not cure the constitutional violation that would exist if section 1225(b) were interpreted not to require individualized bond hearings. *See Rodriguez II*, 715 F.3d at 1144 ("[T]he discretionary parole system available to § 1225(b) detainees is not sufficient to overcome the constitutional concerns raised by prolonged mandatory detention"); *see also Arias*, 2016 WL 3906738, at *10 (same).

---

[3] 8 U.S.C. § 1229a(c)(2)(A) provides that in a removal proceeding, an alien "has the burden of establishing—
    (A) If the alien is an applicant for admission, that the alien is clearly and beyond doubt entitled to be admitted and is not inadmissible and is not inadmissible . . . ' or
    (B) By clear and convincing evidence, that the alien is lawfully present in the United States pursuant to a prior admission."

### III. **Petitioner's detention violates due process**

The Government argues that Petitioner's detention does not violate due process because her detention serves a valid statutory purpose of ensuring Petitioner's appearance at her removal proceedings as well as her availability for removal. The Court, however, is not questioning the Government's authority to detain Petitioner; rather, the Court's concern is with the length of Petitioner's detention without an individualized bond hearing. The Court finds nothing in section 1225(b) "that clearly demonstrates a congressional intent to authorize indefinite . . . detention." *See Zadvydas*, 533 U.S. at 699.

Lastly, the Court notes that the circumstances particular to this Petitioner heighten the due process concerns in this case. The Court has been presented with no facts that would warrant a legitimate concern that Petitioner may not appear at her removal proceedings. Petitioner has resided in the United States for nearly 14 years, and she has five children, under the age of 12, who are United States citizens residing in the United States. Pet. ¶ 8. She has a home to return to if she is released. Pet. ¶ 8. In addition, Petitioner was released in connection with her criminal case and surrendered herself to serve her criminal sentence. Parole Req. at 4.

Whether Petitioner actually is released on bond or granted admission to the United States is at the discretion of the immigration judge. But her detention, which has exceeded seven months, without an individualized bond hearing violates the core protections guaranteed by the Due Process Clause. *Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects.")).

## CONCLUSION

For the foregoing reasons, the Court holds that Petitioner's detention without an individualized bond hearing violates due process. The Government is ORDERED to provide her with an individualized bond hearing not later than **May 22, 2017**.

Ms. Morris' petition for a writ of habeas corpus is GRANTED. The Clerk of Court is respectfully directed to close this case.

**SO ORDERED.**

Date: **May 11, 2017**  
New York, New York

_____  
**VALERIE CAPRONI**  
**United States District Judge**